UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA

             V.                                                  14 CR 810-10 (CM)

JOSEPH GRAY,

                    Defendant.

------------------------------------------------------------x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

       Joseph Gray is currently serving an 84 months' sentence for his substantial role in a massive oxycodone distribution operation centered principally at a sham pain management office in upper Manhattan run by his co-defendant and scam mastermind, Dr. Moshe Mirilashvili. Gray is scheduled to be released from federal custody in February 2021.[1]

       On April 6, 2020, Gray filed a motion asking the Court to modify his sentence to "time served and impose a special condition of home confinement to his post-release supervision as a compassionate release under 18 U.S.C. § 3582(c)(1)(A) and the Eighth Amendment, due to the pandemic of COVID-19 and his vulnerable health condition." *See* Defendant's Motion, Goldsmith Affirmation at 1. Gray, who is 53, claims to have "several significant and pre-existing medical conditions, including a heart condition and Type II diabetes." (Motion ¶ 10).

---

[1] There is a state detainer lodged against Gray for a parole violation; accordingly, when he completes his federal term of imprisonment, he will not be released but instead transferred into state custody.

1

On April 22, 2020, the Court denied Gray's motion based on his failure to comply with the mandatory statutory exhaustion requirements as set forth in Title 18, United States Code, Section 3582(c)(1)(A). That denial was without prejudice to the renewal of the motion upon satisfaction of those exhaustion requirements. (Dkt. 509).

On May 18, Gray filed a renewed compassionate release motion alleging the same grounds for release as those in his April 6 motion, except he now says that he has exhausted his administrative remedies with the BOP—he claims that his request for compassionate release was submitted to the Warden at FCI Beckley, and that the Warden denied his request on April 24, 2020. (Renewed Motion at ¶ 1, and Attachment 1.)

<u>Compassionate Release</u>

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Once a defendant has exhausted administrative remedies, with respect to the substantive determination, and in addition the statutory requirement that the Court consider the factors set

forth in Section 3553(a), the United States Sentencing Guidelines contain a provision, Section 1B1.13, applicable to motions for sentencing reductions pursuant Section 3582(c)(1)(A). That section provides, in relevant part, that a reduction in sentence may be appropriate if the Court determines that--

    (1)    (A) Extraordinary and compelling reasons warrant the reduction; or

           (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2)    The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3)    The reduction is consistent with this policy statement. U.S.S.G. § 1B1.13.

Subsection (1)(B) is inapplicable. With respect to subsection (1)(A), which relates to "extraordinary and compelling reasons" warranting a reduction, the Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See id.* § 1B1.13 comment (n.1). The only relevant provision reads as follows:

    (A)    Medical Condition of the Defendant.—

        (i)    The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

        (ii)    The defendant is—

            (I)    suffering from a serious physical or medical condition,

            (II)    suffering from a serious functional or cognitive impairment, or

            (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to

> provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

As the proponent of the Motion, Gray bears the burden of proving that "extraordinary and compelling reasons" exist and that he is entitled to the relief he seeks. *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

<u>Grays Motion in the Bureau of Prisons</u>

Gray's made no mention in his original motion about having sought administrative relief from the Bureau of Prisons on compassionate release grounds. However, the Government in its response to that motion says that it learned that Gray had indeed made a request for compassionate relief in an email to the Warden on March 27, 2020; the Government attached the email as an exhibit to its opposition papers. The email is addressed to Warden Young at the Beckley Correctional Institution:

> I am writing your office in regard to the outbreak of the corona virus in this country and throughout the FBOP. I'm asking you for a compassionate release do to my health and the health of others. these are troubling times that we're going through and I'm asking for you to order home confinement for me. i am 53 years old and i fall into the category of high-risk citizens that might not live if i come in contact with the virus. i know that i could be safer in the confines of my own home as i know that prisons are a breeding ground for viruses to spread very quickly as I'm sleeping in closed quarters, sharing a small cell with poor ventilation. the prison facilities are ticking time bombs as as they are overcrowded and unsanitary in the best of times. Officers are going out and about their daily lives with a high risk of bringing it back in to us inmates ex: officers at Berlin and grand Perry. Even my own case manager has fallen ill and we don't know if he contracted this virus and brought it back into the facility. the BOP doesn't provide appropriate medical care in the best of times and at my age i can't afford for my respiratory system to fail in the middle of the night and i die in prison due to a lack of assistance. I've been on this compound for 2 years now and I'm do to be released in 10 months. due to these circumstances i am requesting a compassionate release or home confinement for my health and safety. thank you for your time.

Government Opposition, Exhibit A.

On April 24, 2020, in a memorandum order prepared by Unit Manager, S. Staples, for Warden D. L. Young, Gray's request for compassionate release was denied. The memorandum sets forth BOP criteria for granting compassionate release, and ultimately concludes that Gray does not meet that criteria:

> Inmate Gray requested a Reduction in Sentence (RIS) based on concerns about COVID-19. After careful consideration, your request is denied.
>
> According to inmate Gray, he is a 53-year old male that is heightened risk of death due to his current health status; also, he states it is impossible to practice social distancing in a prison environment.
>
> *********************
>
> The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your RIS request is denied at this time.

(Renewed Motion, Attachment 1.)

The Motion Before the District Court

Warden Young having considered and rejected Gray's administrative motion for compassionate release, this Court now has jurisdiction to consider the compassionate release motion he filed in the district court.

Gray does not qualify for compassionate release under any provision of the applicable Sentencing Guideline, Section 1B1.13: he is not "suffering from a terminal illness" nor is he "suffering from a serious . . . medical condition" or "functional or cognitive impairment" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not likely to recover." U.S.S.G. § 1B1.13

comment (n.1). Gray makes no allegation that he has either a terminal illness or a serious medical condition that substantially diminishes his ability to provide self-care.

Nor does the Gray provide any other meaningful basis to conclude that the COVID-19 pandemic presents an extraordinary and compelling reason to release him. He relies on the fact that he is 53 years old and, according to the him, "suffers from a number of serious medical problems, including heart disease and Type II diabetes." (Motion ¶ 10.) However, he provides nothing to document these conditions, which he contends pre-date his present term of imprisonment and yet are notably absent from the Presentence Investigative Report. Indeed, the PSR includes only the following: "the defendant stated that he is in good physical health." (PSR ¶ 102).

And there is nothing in defendant's recent BOP medical records to suggest he has "serious medical problems." There is no mention that the defendant has ever been diagnosed with or treated for diabetes in his nearly six years in BOP custody. To the contrary, in regular medical appointments, including his intake physical examination in December 2014, the defendant has denied any history of diabetes. *See* Government Opposition, Exhibit B. With respect to a heart condition, the defendant appears to have "hypertension," or high blood pressure, for which the defendant has received medication for years. BOP medical records describe the condition as "benign," and at a medical checkup in February 2020, defendant's cardiovascular tests were all listed as "within normal limits" and included the following note: "History of hypertension. [Gray] denies any chest pain or shortness of breath. Blood pressure is doing good today." Government Opposition, Exhibit C.

With respect to his age, Gray identifies no basis to conclude that he is differently situated that any of the nearly 35,000 other federal inmates who are presently 51 years or older.[2]

For its part, the BOP is taking the pandemic seriously. *See* BOP Health Management Resources, available at https://www.bop.gov/resources/health_care_mngmt.jsp; *see also* Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. There is absolutely no indication that prison officials at Beckley Correctional Facility are failing to mitigate the virus proliferation. Gray is in the same situation as the vast majority of the inmates housed in BOP facilities during this outbreak.

And even if Gray could meet his burden of establishing that the COVID-19 pandemic created "extraordinary and compelling reasons" warranting his release, that alone would be insufficient, because the Court would still need to consider the factors set forth in Section 3553(a), including the need to provide just punishment for to protect the community from further crimes by this defendant. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Ebbers*, No. S4 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020) ("[T]he existence vel non of 'extraordinary and compelling reasons' determines only whether a defendant can be considered for release—the existence of such reasons does not mandate release."); *United States v. Israel*, No. 05 CR 1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition [Section 3582] was drafted using the word 'may,' not 'must.'").

Gray was a substantial participant in a massive oxycodone drug distribution scheme. He has a significant criminal history, and got involved in the Mirilashvili oxycodone ring while on

---

[2] See https://www.bop.gov/about/statistics/statistics_inmate_age.jsp.

probation for an earlier conviction. He has had two significant disciplinary infractions in the last two years, one for getting into a fight with another inmate, and another for being intoxicated and refusing to take a breathalyzer test. Government Opposition, Exhibit D. The § 3553(a) factors weigh against granting compassionate release.

The motion is denied.

Dated: June 8, 2020

_____
Colleen McMahon
Chief Judge

BY ECF TO ALL PARTIES